# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOHN RILEY and GENEVIEVE HARRIS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) Case No.: 2:12-CV-346-VEH |
| UNIVERSITY OF ALABAMA HEALTH SERVICES FOUNDATION, P.C., | ) ) ) ) |
| Defendant. | ) ) |

## DEFENDANT'S MOTION TO STRIKE PORTIONS OF DECLARATIONS OF JOHN RILEY, GENEVIEVE HARRIS, AND JOE CAPTAIN

Pursuant to Federal Rule of Civil Procedure 56 and the Federal Rules of Evidence, Defendant, University of Alabama Health Services Foundation, P.C. ("UAHSF"), moves to strike portions of the declarations of John Riley, Genevieve Harris, and Joe Captain. (See Doc. 24-1, 24-2, and 27). In support of its motion, UAHSF states as follows:

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Affidavits that do not meet this standard have no probative value,

1

are not to be considered, and should be struck. *See U.S. v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994) (concluding district court erred by considering inadmissible evidence in support of motion for summary judgment); *Pashoian v. GTE Directories*, 208 F. Supp. 2d 1293, 1297 (M.D. Fla. 2002) ("An affidavit submitted in connection with a summary judgment motion is subject to a motion to strike if it does not meet the standards set forth under Rule 56[c] of the Federal Rules of Civil Procedure.").

### A. Riley's Declaration (Doc. 24-1).

The following portions of Riley's declaration contain inadmissible hearsay, speculation, lay witness opinion evidence, are not based upon personal knowledge, and are due to be stricken:

1. ¶ 20   Joe Captain's job description was changed in an obvious effort to disqualify Genevieve and I.  The education requirements were also changed in order to justify giving the job to Montgomery, who was only a high school graduate.

Speculation, lay witness opinion evidence and not based on personal knowledge.  Riley speculates and offers his opinion about unidentified persons' supposed motivations for revising a job description.  He does not even identify the persons for whom he is offering motivations.

2. ¶ 29   Since Montgomery has been in the manager position, UNOS gave us a warning for having ongoing UNOS violations by our organ procurement personnel.  The recommended doing root cause analysis.  They found our excuses unacceptable.

Hearsay, speculation, and lay opinion testimony. Riley offers testimony regarding an out of court UNOS statement to unidentified organ procurement personnel for the truth of the matter asserted. He also speculates about what UNOS found or did not find acceptable.

    3. ¶ 30  The AOPO found all departments lacking, so they made recommendations for each department to develop processes to deal with complaints and errors before the AOC can obtain AOPO certification. Montgomery lacks the expertise to implement such a program.

Hearsay, speculation, and lay opinion testimony. Riley offers testimony regarding an out of court AOPO statement to "all departments", many of which he does not work in or supervise, for the truth of the matter asserted. He also speculates and offers his lay opinion about Montgomery's expertise.

    4. ¶ 33  . . . Thus the FDA recognized that Walt Montgomery did not possess the training or education, coming from the IT department, to perform the core responsibilities for his position.

Speculation and lay opinion testimony. Riley offers an opinion of what the FDA's letter means, going beyond the statement in the letter.

    5. ¶ 35  The procurement team did not know that a new form was created to help them document the usage of instrument trays during procurement. The first thing the auditor looks for is proof that the OPO has executed the corrective actions.

Hearsay, speculation, and lay opinion testimony. Riley offers testimony regarding what the procurement team "did not know." He is either speculating or

3

offering an opinion about what the procurement team knew or offering hearsay testimony from a member of the procurement team.

> 6. ¶ 39   . . . Montgomery's lack of QA experience has resulted in problems with the FDA. . . .

Speculation and lay opinion testimony.  Riley offers his opinion of what has caused problems with the FDA.

> 7. ¶ 40  Lalisan and Hicks had given the position to Montgomery before they interviewed me.  Montgomery did not do a good job supervising other employees as data manager.

Lack of personal knowledge, speculation and lay opinion testimony.  Riley has no personal knowledge of Lalisan and Hicks decision making or thought processes.  (Additionally, Hicks did not interview Riley or any other candidate.)  Riley also lacks personal knowledge of Montgomery's performance in managing employees as data manager as Riley did not work under Montgomery when Montgomery was data manager.

### B. Harris' Declaration (Doc. 24-2).

The following portions of Harris' declaration contain inadmissible hearsay, speculation, lay witness opinion evidence, are not based upon personal knowledge, and are due to be stricken:

> 1. ¶ 13   . . . According to Linda Sojourner, the AOC did not post the position before announcing the promotion of Walter Montgomery.

1/2472647.1

Hearsay.  Harris testifies about what Sojourner allegedly told her—an out of court statement offered for the truth of the matter asserted.

> 2. ¶ 15  Walt Montgomery is less qualified than both John Riley and I. Montgomery worked in the IT department and did not have any QA experience . . .

Speculation, lay opinion testimony and not based on personal knowledge. Harris offers her opinion about comparative qualifications.  She further testifies about what Montgomery's experience despite the fact that she did not supervise Montgomery while he was in the IT department and has no personal knowledge about his prior experience.

> 3. ¶ 19  After Montgomery was promoted in November 2010, I learned that the only white colleague in my department, Virginia Guindon, had been offered the position in January of 2010, before Joe Captain left on disability.  Attached as Exhibit B is an excerpt of the transcript of a recorded conversation I had with Guindon when she confirmed that she had been asked if she was interested in Joe Captain's position. Guindon stated that, although they did not specifically offer her Captain's job, they asked her if she "would be interested" in the position.

Hearsay and incomplete.  Harris' testimony in ¶ 19 is that Guindon told her that someone else (unidentified in ¶ 19) told Guindon in support of Harris' statement that Captain's job had been offered to Guindon.  This is an out of court statement offered for the truth of the matter asserted.  Harris' offer of an incomplete transcript of a tape recording she made surreptitiously does not change the hearsay character of this testimony.  To the extent the Court accepts this taped

5

hearsay, Defendant would request that it consider the entire taped conversation rather than simply the excerpted portion.

> 4. ¶ 20  . . . However, the QA Manager job description was changed in an attempt to add criteria that would exclude John Riley and I from consideration.

Speculation, lay witness opinion evidence and not based on personal knowledge.  Harris speculates and offers her opinion about unidentified persons' supposed motivations for revising a job description.  She does not even identify the persons for whom she is offering motivations.

> 5. ¶ 22  . . . Lalisan had also instructed an employee to manipulate a consent form involving an infant donor.  This was discovered upon review of the telephone conversation, which was routinely recorded by the AOC.

Hearsay.  Harris offers testimony about what Lalisan allegedly told an unidentified employee, as well as some other unidentified person's discovery of this alleged instruction based on the review of a recorded conversation.  All of this testimony is Harris reporting out of court statements offered for the truth of the matter asserted.

> 6. ¶ 24   There are several other examples of job posting that were manipulated to exclude or qualify certain employees. . . .

Not based on personal knowledge, speculation and lay opinion testimony. Harris broadly states that job postings were manipulated by unnamed persons to exclude or qualify other unnamed persons.

> 7. ¶ 25  . . . The Certified Procurement Transplant Coordinator (CPTC) certification was added to the job description as a requirement in order to disqualify black employees who had Certified Tissue Bank Specialist (CTBS) certifications, which were more closely aligned with the responsibilities of the training manager.

Lack of personal knowledge, speculation and lay opinion testimony.  Harris offers her opinion of why some unidentified person has added a requirement to a job description, along with her lay opinion about what the responsibilities and qualifications should be for the training manager position.

> 8. ¶ 26  . . . This change was not logical, as tissue recover is heavily FDA regulated and it would not make sense to have a non-CTBS person managing the tissue area. . . .

Lack of personal knowledge, speculation and lay opinion testimony.  Harris offers her opinion of why some unidentified person changed a job description and that it was not logical to her.

> 9. ¶ 27  . . . There was also a position that dealt with donor families, for which a black employee, Marshae Crum, expressed an interest to Dem Lalisan.  The donor family job description was changed to add a requirement for a Master's Degree in a particular field, such as social work.  Only one employee at the AOC had that specific degree, Carrie Peter, who is white.

Hearsay, lack of personal knowledge, speculation and lay opinion testimony.  Harris testifies about what Crum allegedly said to Lalisan for the truth of the matter asserted.  Laying no basis for her opinion or the basis of her knowledge, she then goes on to offer her opinion that some unidentified person changed a job description requirement and that she thinks it was to favor Peter.

> 10. ¶¶ 16-17  Montgomery's position was announced as a "promotion" in a staff meeting on November 9, 2010. . . . It was also announced at the meeting that Montgomery would no longer be handling IT issues.

Hearsay and no personal knowledge.  Harris' testimony above is an out of court statement offered for the truth of the matter asserted.  In fact Harris did not attend the November 9, 2010, staff meeting or record the meeting.  Accordingly, she cannot authenticate the content of the recording or verify the accuracy of the transcript.

### C. Captain's Declaration (Doc. 27).

The following portions of Captain's declaration contain inadmissible hearsay, speculation, lay witness opinion evidence, are not based upon personal knowledge, and are due to be stricken:

> 1. ¶ 4 . . .During my absences in 2009 and 2010, John filled in for me and took over many of my responsibilities.  For example, he worked with the donor charts and reviewed them for accuracy and completeness.  He conducted internal audits of the AOC procurement facilities and sat in for me during the last AATB audit, which we passed.

Not based on personal knowledge and hearsay.  Captain testifies about what Riley did at the AOC during the time Captain was absent from the AOC.  Captain cannot possibly have personal knowledge of what occurred at the AOC when he was not there.  Alternatively, his knowledge is based on inadmissible hearsay.

> 2. ¶ 9 . . . Montgomery had no quality assurance or quality improvement experience that was documented.  Nor did he perform any quality assurance duties in that position, to my knowledge.  Montgomery's basic duties involved data entry and computer and technology related

tasks.  I was shocked to learn that Montgomery was placed in the QA Manager position in 2010.  He was not qualified.

Speculation, hearsay, lay opinion testimony and not based on personal knowledge.  Captain offers his opinions about Montgomery's qualifications and experience despite the fact that he never supervised Montgomery and he has no personal knowledge about his prior experience.  Captain's testimony that he learned from an unidentified person that Montgomery was placed in the QA Manager position in 2010 is hearsay.

> 3. ¶ 10  According to Fran Lewis, Montgomery screamed at her and harassed her until she left in January of 2003.  Lewis filed an EEOC charge alleging discrimination.  Subsequently, Lalisan decided that Montgomery could never work in a supervisory position with the AOC in the future because of his lack of interpersonal and leadership skills.

Speculation, hearsay and not based on personal knowledge.  Captain's knowledge of an alleged conflict between Montgomery and Lewis is based on what Lewis told Captain; thus, this testimony is inadmissible hearsay.  Additionally, Captain has no personal knowledge of what Lalisan decided regarding Montgomery's employment or why he made those decisions and Captain's testimony on the subject is pure speculation.

> 4. ¶ 11  . . . On the other hand, Montgomery lacked any qualifications or experience to perform competently in that position.

Speculation, lay witness opinion evidence and not based on personal knowledge.  Captain testifies about Montgomery's experience despite the fact that

9

he did not supervise Montgomery and he has no personal knowledge about Montgomery's prior experience.

          Respectfully submitted,

          s/ Summer Austin Davis
          Summer Austin Davis (DAV185)
          sdavis@babc.com
          Bradley Arant Boult Cummings LLP
          One Federal Place
          1819 Fifth Avenue North
          Birmingham, AL 35203-2104
          Telephone: (205) 521-8000
          Facsimile: (205)521-8800

<u>OF COUNSEL</u>
Anne Yuengert (YUE001)
ayuengert@babc.com
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8916
Facsimile: (205) 488-6916

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2013, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of such filing to the following:

Samuel Fisher
Toni J. Braxton
Attorneys for the Plaintiffs
Wiggins, Childs, Quinn & Pantazis, LLC
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

None

s/ Summer Austin Davis
Of Counsel

1/2472647.1